IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 17, 2002

## TERRY DAVID STEPHENS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 96-C-1248     Cheryl Blackburn, Judge**

---

**No. M2001-01036-CCA-R3-PC - Filed December 30, 2002**

---

The petitioner was convicted in 1996 of aggravated rape and sentenced to confinement for twenty years as a Range I, standard offender. The conviction was affirmed on direct appeal and, subsequently, he filed a timely petition for post-conviction relief. The post-conviction court dismissed the petition following a hearing, and the petitioner timely appealed, alleging that trial counsel was ineffective for failing to convey settlement offers and to request jury instructions as to lesser-included offenses. The post-conviction court dismissed the petition following a hearing, and we affirm that dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Jesse N.H. Bacon, Madison, Tennessee, for the appellant, Terry David Stephens.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The evidence at trial was set out in the direct appeal of the petitioner's conviction:

> On July 22, 1992, Rosalind Cackley took the victim to Our Kids Center, an outpatient clinic that provides medical evaluations for children with allegations of sexual abuse. Sue Ross, a registered nurse and pediatric nurse practitioner, participated in the examination of TDS. Ms. Ross recalled that the verbal interview of TDS was very

difficult, specifically remarking that TDS requested a male interviewer, was "resistive" in some ways, and was not very verbal. During this interview, the victim informed Ms. Ross that his brother was in a bedroom and that his father was not drunk and did not apologize for this incident afterwards. Nonetheless, the child did discuss "penile rectal penetration" by his father. Ms. Ross also performed the genital examination of the victim. She remarked, "[t]here were no . . . physical findings, any remarkable physical findings at all on the anal genital portion of the exam." Ms. Ross explained, however, that usually there would not be any physical findings, even twenty-four hours after the alleged abuse occurred, and this incident allegedly occurred months earlier. Ms. Ross then referred this alleged incident of child abuse to the Davidson County Department of Human Services.

Tammy Burns, a social counselor with DHS, was assigned to investigate the allegation of abuse concerning TDS. Ms. Burns made telephone contact with Rosalind Cackley and arranged to meet with her, the victim, and the victim's brother. On July 30, 1992, Ms. Burns conducted her interview during which time TDS recounted the incident of February 6, 1992. Mrs. Burns' testimony, which followed the testimony of Ms. Ross, was objected to by defense counsel upon hearsay grounds. Her notes of the interview, which were introduced during the State's case in chief, reveal:

> [TDS] said his father anally penetrated him in Nashville at his grandmother's house when she lived on Cahal Street. He said it happened two days before his birthday, which was February 6, 1992, or 1982. [TDS] said the night it happened, his father had been drinking alcohol and he remembered that his father had received his income tax check earlier that day. He said he and his brother had to sleep in the living room because there were so many people there that night. [TDS] said [his brother] was asleep on the couch, and he was asleep on the floor. When they went to bed, his father was still out with his friends. He knew his father was planning to leave Nashville the next day; however, his father had not told him where he was going nor when he planned to return. [TDS] said his father woke him up and was talking funny and had alcohol on his breath.
>
> According to [TDS], the lights in the house were off. His father got under the covers with him and took his underwear

and pants off. [TDS] said his father told him to take his underwear and pajama bottoms off. When he did, his father told him to turn over. [TDS] said his father then put his penis inside his butt.

[TDS] explained that after his father finished, he told him he was sorry and that he wouldn't have done it if he had not been drunk.

At this point in the interview, [TDS] became emotional and said he didn't want to talk about his father any longer. [TDS] said he did not want to answer any more questions, and that [his younger brother] would have to explain what happened to him because he was finished talking.

At the conclusion of this interview, Tammy Burns contacted the Metro Nashville Police Department, Youth Services Division. Furthermore, as a protective plan, the children were not permitted unsupervised visitation with their father. For the next two years, the children remained in Nashville in the custody of the appellant's mother, Rosalind Cackley.

On May 3, 1994, the Department of Children's Services (formerly DHS) received information that the appellant may have had contact with his children. In response to this referral, Malinda Lundie, a sexual abuse investigator, and Detective Ron Carter, Metro Police, Youth Services Division, traveled to the home of Rosalind Cackley to check on the children's well-being. Although Detective Carter was unable to locate the appellant, arrangements were made for the children to live with Anthony Michael "Mike" Battiato, the appellant's half-brother, who at this time was a resident of Tennessee. Battiato obtained custody of TDS and his younger brother after being appointed their legal guardian. Battiato, his friend Samuel, and the two children moved to Omaha, Nebraska in December 1995. This concluded the State's proof.

State v. Terry Stephens, No. 01C01-9709-CR-00410, 1998 WL 603144, at **1-2 (Tenn. Crim. App. Aug. 24, 1998) (footnotes omitted), perm. to appeal denied (Tenn. Mar. 1, 1999).

Subsequently, the petitioner filed a petition for post-conviction relief presenting various allegations which, on appeal, have been limited to the claims that trial counsel was ineffective for failing to convey settlement offers and to request that the jury be instructed as to lesser-included offenses.

During the hearing on the petition for post-conviction relief, the petitioner testified as to these claims. He was asked whether he had discussed guilty plea offers with trial counsel:

Q. Okay. Did you discuss the option of negotiating a plea versus going to a trial?

A. He came to me a couple of times and said that they had offered me 10 to 12 years and I told him no, and there was a couple of times they offered that, and then one time he came and said that they had offered me – I was upstairs, in fact, and he said they had offered me nine at thirty, and he had turned it down, and I was kind of skeptical of that. I was like, well, you know, I should have maybe heard something about that, but I wasn't made aware of all these agreements or pleas that they was making, but I never accepted any.

Q. So your testimony is that [trial counsel] never relayed that offer to you until after it was denied?

A. Yes. He told me that he had denied it.

Q. Okay. Had you given [trial counsel] instructions as to whether he was to accept any offers?

A. No, sir.

Q. Or did you give him instructions as to deny offers?

A. No, sir.

The petitioner also was asked to explain his claim as to lesser-included offenses:

Q. Okay. Now one of the other issues that was raised was the fact that there were no lesser included offenses given in your jury instructions. Did you ever request [trial counsel] to argue for lesser included offenses?

A. See, this is the first time I had ever been involved in anything like this, and I was more reliant on [trial counsel] . . ., you know, to do what was needed to be done. I mean, you know, but I didn't – like I say, I'm still not real up on the law, but I've tried to learn as much as I can.

-4-

Q. Well, do you recall ever discussing that issue before the trial?

A. No, sir.

Q. Or during the trial, was it discussed?

A. No, sir. Well, yes, I believe [trial counsel] was saying during the trial that he didn't want no lesser includeds. It was either rape or nothing.

Q. Were you in agreement with that?

A. Well, when he read that, that was before the Court and everybody and it was like I didn't understand that, but like I say, he kept telling me that everything was going good, and so I just kind of put my trust in him.

The petitioner's trial counsel testified that he had been licensed to practice law in 1966, and his practice consisted of "predominantly criminal defense work with a particular emphasis upon crimes of violence such as sexual assaults, murder, as opposed to white collar-type criminal matters." He said that "quite a few" of his cases resulted in jury trials. Trial counsel described the stance taken by the defendant as to the charge:

> The defense position was that Mr. Stephens was not guilty. He felt so strongly about that that there was really no factual foundation for any lesser included instruction, and if my memory is correct, it was my position and Mr. Stephens' position that this was either guilty or not guilty; that he was indeed simply not guilty of any misconduct with his son, so therefore, there certainly would not have been any argument as to lesser included offense.

As to whether the State had presented a proposal to settle the matter, trial counsel testified:

> Well, I don't recall the details of the offer, but anytime I received an offer, I would convey it to my client. This was a case, however, that it was clear was going to go to trial since Mr. Stephens, I thought, very convincingly indicated that he was not guilty, so I conveyed the offer, whatever it may have been, to Mr. Stephens, but he rejected the offer, and I think based upon his belief that he was not guilty, there was never any undue pressure put by me upon him to go ahead and plead guilty.

During cross-examination, trial counsel was questioned as to whether he had discussed the matter of lesser-included offenses with the petitioner:

Q. Did Mr. Stephens at any time toward the end of the trial make any indication to you that he had a problem with you not requesting lesser included offenses?

A. I do not recall that. Normally, a defendant would not make that comment to his attorney. I don't remember in this particular case, but it was always clear to Mr. Stephens that this was a case that our position was he did not do it, and I was certainly going to shy away from indicating that he was not guilty, but if he did do it, it wasn't as serious as the State indicated. It was kind of either he is not guilty or he is guilty. In this case, there was no effort made to convince the jury that it should be a lesser included offense.

Q. And was that issue ever discussed with Mr. Stephens prior to the trial?

A. I don't have any independent memory. I believe in this case, based upon our defense, that it probably was discussed, but I do not have an independent memory at this time.

Following the hearing on the post-conviction petition, the court made written findings of fact and conclusions of law. As to the issue of whether trial counsel had conveyed to the petitioner any guilty plea offers from the State, the post-conviction court found:

[Trial counsel] further testified that, even knowing that the matter would proceed to trial, anytime he received a plea offer from the State that he would convey the same to the petitioner. He also testified that the petitioner always rejected any offer and that he put no pressure on the petitioner to plead guilty. [Trial counsel] also testified that, since the petitioner's position was that he was not guilty, that there would be no factual foundation for a lesser-included offense. As footnoted above, nevertheless, [trial counsel] did file a motion for just such a jury instruction.

The earlier footnote in the findings of the post-conviction court states as follows: "The court record contains a Request for Range of Punishment Instruction as to the indicted offense and as to all properly included lesser offenses filed by [trial counsel]."

Additionally, the post-conviction court made a credibility determination as to the conflicts in testimony between the petitioner and trial counsel:

-6-

Concluding that [trial counsel] is more credible in this regard than the Petitioner, this Court finds that the petitioner has also failed to carry his burden of proof by clear and convincing evidence on this issue. This Court find[s] that [trial counsel] kept the petitioner informed about his case, counseled the petitioner of all developments in his case, and properly preserved the petitioner's rights. The petitioner has also failed to demonstrate any prejudice suffered as a result of [trial counsel's] representation on this issue. This Court therefore finds that this issue is without merit and that it is hereby denied.

## ANALYSIS

### Ineffective Assistance of Counsel

The standard of review which we apply was set out in <u>Fields v. State</u>, 40 S.W.3d 450, 456 (Tenn. 2001):

> The standard of appellate review applied to ineffective assistance claims has always been that a trial court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See <u>Henley v. State</u>, 960 S.W.2d 572, 579 (Tenn. 1997); <u>Tidwell v. State</u>, 922 S.W.2d 497, 500 (Tenn. 1996). Under this standard, appellate courts do not reweigh or re-evaluate the evidence or substitute their own inferences for those drawn by the trial court. <u>Henley</u>, 960 S.W.2d at 579. Furthermore, questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge. <u>Id.</u>

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See <u>State v. Taylor</u>, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." <u>Id.</u> at 685, 104 S. Ct. at 2063. The <u>Strickland</u> standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the

defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

By statute in Tennessee, the petitioner at a post-conviction relief hearing has the burden of proving the allegations of fact by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997). A petition based on ineffective assistance of counsel is a single ground for relief, therefore all factual allegations must be presented in one claim. See Tenn. Code Ann. § 40-30-206(d) (1997).

We note that when post-conviction proceedings have included a full evidentiary hearing, as was true in this case, the trial judge's findings of fact and conclusions of law are given the effect and weight of a jury verdict, and this court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the

cause." Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999), "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

We now will consider the two issues presented in this appeal.

The petitioner's first claim was that while trial counsel "a couple of times" conveyed guilty plea offers of "10 to 12 years," he did not convey an offer of "nine at thirty," but that counsel, upon his own initiative, and without advising the petitioner, rejected this offer. Trial counsel, however, testified that "anytime [he] received an offer, [he] would convey it to" the petitioner. He said that the petitioner "rejected" the offer, and he thought "that it was clear [the case] was going to go to trial since [the petitioner] . . . very convincingly indicated that he was not guilty." The post-conviction court heard the conflicting testimony on this issue and, finding trial counsel more credible than the petitioner, concluded that the petitioner had failed to carry the burden of proof on this claim.

The petitioner's second claim is that "[c]ounsel was ineffective for not requesting a jury instruction as to the lesser included offense" of aggravated sexual battery. As to this issue, the post-conviction court determined that "[t]he court record contains a Request for Range of Punishment Instruction as to the indicted offense and as to all properly included lesser offenses filed by [trial counsel]." The record on appeal does not include the instructions given by the court at the conclusion of the petitioner's trial. Thus, we do not know what lesser-included offenses, if any, were charged. However, this claim still must fail, because it was the responsibility of the trial court to instruct as to appropriate lesser-included offenses regardless of what, if any, lesser-included offenses counsel asked to be included in the jury instructions. See Tenn. Code Ann. § 40-18-110(a) (1997). As was explained in Yasmond Fenderson v. State, No. E2001-01088-CCA-R3-PC, 2002 WL 832205, at *5 (Tenn. Crim. App. May 2, 2002), perm. to appeal denied (Tenn. Oct. 7, 2002), in resolution of a similar claim, the "obligation to instruct as to these lesser-included offenses was free-standing and not dependent upon the defendant's request for the instructions." Additionally, we note that the petitioner did not allege or offer proof in the post-conviction hearing that his counsel was ineffective by failing to raise the lesser-included offense issue on appeal.

As to his first claim, that trial counsel, himself, rejected an offer of nine years at thirty percent, the post-conviction court accredited the testimony of trial counsel who denied that this had occurred. The second claim, that trial counsel neglected to request that a lesser-included offense be charged, is refuted by the record as cited by the post-conviction court; but, even if true, it would not

entitle the petitioner to post-conviction relief. It is the responsibility of the trial court to instruct as to lesser-included offenses, and this duty is not dependent upon an appropriate request from trial counsel. Thus, as to both of these claims, the post-conviction court determined that the petitioner did not establish either that trial counsel was ineffective or that he was prejudiced by any action or inaction of trial counsel. As to both of the petitioner's claims, the record fully supports the conclusions of the post-conviction court and its findings that the petitioner failed to establish either that trial counsel was ineffective or that he was prejudiced thereby.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the order of the post-conviction court denying relief.

_____
ALAN E. GLENN, JUDGE